In re BASTANCHURY CORPORATION, Limited.

JOHN DEERE PLOW CO. OF MOLINE v. TURNER.

No. 7093.

Circuit Court of Appeals, Ninth Circuit.

Aug. 21, 1933.

Burke Corbet and John Selby, both of San Francisco, Cal., and James E. Neville, of Los Angeles, Cal. (Corbet & Selby, of San Francisco, Cal., and Clarke & Bowker, of Los Angeles, Cal., of counsel), for appellant.

Carl C. Cowles, of Santa Ana, Cal., for appellee.

Before WILBUR, SAWTELLE, and MACK, Circuit Judges.

WILBUR, Circuit Judge.

The bankrupt, operating under the name of the Fullerton Implement Company, operated a store in Fullerton, Cal., for the sale of agricultural implements. It purchased about 90 per cent. of its stock from the John Deere Plow Company of Moline, the appellant in this case. After the Bastanchury Corporation, Limited, had been adjudged a bankrupt, the appellant applied to the referee for a turnover order for the agricultural ·implements and parts which were in the custody of the bankrupt at the time of filing the petition, on the ground that the property was held by the bankrupt under conditional sales contract and the title to such property was in the appellant.

It may be stated that the Bastanchury Corporation, Limited, was a company of large capital and wide operations, and that the store operated by it under the name of Fullerton Implement Company constituted a very small part of its business. The referee denied the application and his order was confirmed by the District Court. The referee found that all the goods in question which were specified in detail in the petition for the turnover order had been purchased under a conditional sales contract, and that as between the bankrupt and the appellant the title thereto was in the appellant. The referee, however, concluded that the appellant was estopped to claim title as against the creditors of the bankrupt for the reason that the implements purchased from the appellant were commingled with other similar goods in the store, and on the further ground that there was no means of identifying the implements as those purchased from the appellant.

The other creditors who transacted business with the Fullerton Implement Company had claims aggregating the sum of $1,-

200 or $1,500, and the indebtedness due the appellant for the implements sought to be turned over was about $5,000. The referee expressly finds that there was no evidence of any creditor being deceived by the conduct of the appellant or of the bankrupt in connection with the conditional sales, but, notwithstanding that, held that the appellant was estopped from claiming the implements described in the application for the turnover order. There is no serious dispute in the evidence. The difference between the parties arises largely from inferences to be derived from the facts proven.

It appears that the appellant and the bankrupt each year signed a contract to regulate the purchases for the following year and until a subsequent annual contract was executed. By the terms of this contract it was expressly agreed that the title to the implements ordered by the bankrupt should remain in the appellant as vendor until paid for. It is not questioned that these contracts were conditional sales contracts, and the referee found such to be the fact. We will therefore dismiss the terms of the somewhat elaborate agreement without further discussion.

█ The appellee, however, does contend that the contract was void by reason of the failure to identify the articles covered by it, and cites in support of that contention the case of Meier & Frank Co. v. Sabin, Trustee (C. C. A.) 214 F. 231. The subsequent orders for implements given to the appellant by the bankrupt and filed by it specifically designated the articles desired and delivered. There is no question raised as to the sufficiency of the orders and bills of lading to identify the goods covered thereby, and under the agreement of the parties the provisions concerning conditional sale applied to such orders when and as delivered. We think it clear, therefore, that the agreements are not invalid by reason of the failure to sufficiently identify the subject-matter of the agreement.

The next question, somewhat analogous thereto, is whether or not the implements claimed were thus purchased in pursuance of the agreement between the parties. The referee found that the implements set out in the appellant's petition were purchased from the appellant. The testimony supports this finding, and it is not attacked by the appellee. The referee did not specifically find upon the question as to whether or not the implements claimed had been paid for. In this regard, the contention of the trustee, the appellee, is in effect that while it is clear that some of the implements on hand had not been paid for and that the indebtedness due from the bankrupt to the appellant represented the purchase price thereof, nevertheless some of the implements may have been paid for, and the trustee therefore claims that the proof was insufficient to justify the turnover order. This contention is based upon the evidence of the manner in which the parties did business and the inference adduced therefrom. The appellee contends that the evidence shows that this course of business between the parties has continued for a number of years, and that originally the accounts of the parties were settled monthly and, later, quarterly. From this he argues that it must follow that all the implements purchased during that period were paid for at the time of the settlement of accounts, and if any of them remained in stock they belonged to the bankrupt and not to the conditional vendor. With this as a premise, he counts upon the inability of the witnesses to definitely state that the implements in question were not purchased during some of the periods for which the accounts had been settled.

█ It appears that in January, 1932, less than a month before the petition in bankruptcy was filed an employee of the bankrupt went over the stock of the bankrupt in the implement store, identified the various implements purchased from the appellant, all being marked with the name of the appellant, and signed and delivered to appellant a statement entitled, "Warehouse receipt," dated January 25, 1932, stating that the items enumerated therein were so purchased, that they were not paid for, and that the title thereto was in the appellant. This receipt was evidence of a past as well as a present agreement between the parties to the contract as to the ownership of the articles scheduled therein, and in the absence of fraud or mistake was binding upon the parties thereto, and if it were so binding, in the absence of evidence that it was incorrect, would be binding on the creditors. It did not purport to transfer title from the bankrupt to the appellant. It was merely a solemn declaration of the facts as determined and agreed upon by the parties. The trustee representing creditors would not be bound or estopped by this writing as an evidence of a transfer of title as it was executed within four months of the filing of the bankruptcy petition, but it would be at least evidence of the facts therein agreed up-

on; and this much is conceded by the trustee. The trustee, however, attacks this agreement entitled a "Warehouse receipt" on the theory that the evidence adduced before the referee showed that it was arrived at without sufficient knowledge of the actual facts, but he does not undertake to prove, and does not claim that he has proven, that the statement is untrue or inaccurate in any respect. Appellant's contention, already stated, is that the employee of the bankrupt who signed the receipt admitted that he could not definitely say that the list did not contain items which had been conditionally sold by the appellant to the bankrupt in earlier years for which settlements had been made. The employee of the bankrupt, who executed this agreement on behalf of the bankrupt, and an employee of the appellant, both testified that the items contained in this receipt were not paid for. Neither testified that any specific item had been paid for. There was no evidence to the contrary. The appellant having produced evidence showing that all goods sold by it to the bankrupt were sold under conditional sales contract, the burden of establishing that title had shifted from the vendor to the vendee in the conditional sales contract by reason of payment therefor was upon the party claiming that to be the fact; in this case, upon the trustee. This burden became heavier when the appellant supplemented its proof that the goods in question had been sold under a conditional sale with the express agreement between the parties to the effect that these particular goods had not been paid for. The testimony of the employee, Kimber, who signed the receipt on behalf of the bankrupt, that he could not testify that some of the items included in the receipt had not been purchased in earlier years, and the fact that Hopper, the employee of the appellant, who testified from its books and records that they had not been paid for but was unable to so state of his own knowledge, did not justify a finding that the title was in the bankrupt rather than in the appellant. At best this was merely negative evidence of no probative value to overcome the positive evidence furnished by the conditional sales contract and the receipt. The referee did not find that the goods claimed were not purchased under a conditional sales contract, and did not find that they were paid for, but predicated his conclusion entirely upon estoppel on behalf of creditors on the ground hereinbefore stated. In this conclusion he is plainly in error. In Bryant v. Swofford Bros. Dry Goods Co., 214 U. S. 279, 29 S. Ct. 614, 618, 53 L. Ed. 997, the Supreme Court stated: "There is nothing in the nature of this contract which would forbid the parties from entering into it if it is valid by the laws of the state where made, but in bankruptcy the construction and validity of such a contract must be determined by the local laws of the state."

Conditional sales contracts are recognized and held valid in the state of California and most of the other states of the Union. The rule in regard to conditional sales of personalty in California is stated in Oakland Bank of Savings v. California Pressed Brick Co., 183 Cal. 295, 191 P. 524, as follows: "The owner of personal property has the right to make an agreement to sell the same and deliver possession thereof to the buyer, upon the condition that the title thereto shall nevertheless remain in the seller until the price agreed on has been fully paid, and the title so withheld by the owner will until full payment, be superior to that of a subsequent mortgage or purchase of such personal property from the buyer, even if such subsequent mortgage or purchase was made without knowledge or notice of the reservation of title and paid full value for the property. Putnam v. Lamphier, 36 Cal. 157; Kohler v. Hayes, 41 Cal. 457; Palmer v. Howard, 72 Cal. 295, 13 P. 858, 1 Am. St. Rep. 60; Lowe v. Woods, 100 Cal. 409, 34 P. 959, 38 Am. St. Rep. 301; Vermont M. Co. v. Brow, 109 Cal. 241, 41 P. 1031, 50 Am. St. Rep. 37; Rodgers v. Bachman, 109 Cal. 555, 42 P. 448; Van Allen v. Francis, 123 Cal. 477, 56 P. 339; Perkins v. Mettler, 126 Cal. 105, 58 P. 384; Lundy F. Co. v. White, 128 Cal. 170, 60 P. 759, 79 Am. St. Rep. 41; Liver v. Mills, 155 Cal. 462, 101 P. 299."

See, also, Pacific Finance Corp. v. Hendley, 103 Cal. App. 335, 284 P. 736, modified by the California Supreme Court, 285 P. 1048, 103 Cal. App. 340.

The trustee contends that the parties to the conditional sales contract in the case at bar disregarded the contract. To support this claim he cites the fact that the purchaser commingled the property purchased with other goods in its place of business. This, however, was not a violation of the terms of the contract, and is merely a repetition of the claim that by such commingling the appellant is estopped from claiming the goods which belonged to it. He also claims: "That the Plow Company did not require the bankrupt to comply with the terms of the alleged contracts, but permitted the bankrupt to

commingle the funds derived from the sale of merchandise with its other money, sent monthly statements to the bankrupt of its account, charged merchandise ordered to the account of the bankrupt, and credited the bankrupt generally on its books with payments received, and, in short, notwithstanding the contracts, in all ways dealt with the bankrupt, and allowed the bankrupt to deal with the merchandise in the usual way of outright debtor and creditor."

The only statement thus made by the appellee which is sustained by the record is the fact that in the bookkeeping system used by the parties to the conditional sales contract, moneys paid by the purchaser to the seller were not as a rule credited to the particular items of merchandise, but 'were credited upon the general account between the parties. This was in pursuance of the agreement between the parties that the title to all the merchandise sold by the vendor to the vendee remained in the vendor until the purchase price of all the property was paid. In short, all the property thus sold was treated as a unit as between the parties to the contract. As between third parties when the property was sold and paid for at the time of sale it was understood by all concerned that the title passed to the purchaser, whereas, if it were sold on credit, the customer was to purchase the same on a conditional sales contract in which the appellant was named as the vendor and the customer as the conditional purchaser. In such case the moneys paid by the purchaser were remitted to the appellant and credited upon the purchase price of the particular implement sold. This was particularly true in the case of tractors. We see no justification for holding that the bankrupt obtained title, contrary to its express agreement, by reason of its own method of doing business. It has been held, however, that a vendor may conduct himself with relation to the ownership of the property in such fashion as to estop him from claiming title as against creditors. Such was the decision of this court in Miller Rubber Co. v. Citizens' Trust & Sav. Bk. (C. C. A.) 233 F. 488. With reference to the effect of that decision as applied to the case at bar, it is sufficient for our present purpose to say that in this case there is no evidence that the appellant by any affirmative action misled any creditor or was guilty of conduct which tended to mislead creditors of the bankrupt. Retention of title by the vendor is not subject to the condition that the goods be kept by the vendee in such manner that they can be so identified that creditors may not be misled by the fact that they are in possession of the vendee nor that they shall not be mingled with other similar goods of the conditional vendee, nor can the act of the vendor in transferring possession estop it from claiming such a transfer of possession is the usual incident of a conditional sale contract. So far as the creditors are concerned, in the absence of some showing that they were in some manner prejudiced by the appellant's method of transacting business with the bankrupt, there is no basis for the application of the doctrine of estoppel, which is predicated upon injury resulting from the conduct of the parties. In this connection it should be stated that it is conceded by the applicant that so far as moneys derived from the sale of property held by the bankrupt under conditional sales contract were mingled with other funds, the vendor cannot claim the same as against a trustee in bankruptcy. The question is not involved in the case at bar in view of the fact that the appellant makes no claim to any money or funds in the possession of the trustee. We see no reason why the property of the appellant should be applied for the benefit of the creditors of the bankrupt.

The order appealed from is reversed, with instructions to enter an order directing the trustee to turn over to the applicant the property described in its petition.