## In re CHAS. M. INGERSOLL CO.
### No. 70202.

United States District Court
N. D. Ohio, E. D.
Jan. 5, 1954.
Opinion March 10, 1954.

869

C. L. Corkwell, Columbus, Ohio, Gardner & Spilka, Cleveland, Ohio, for John Deere Plow Co.

Hugh Wells, Cleveland, Ohio, Wm. Roderick, Akron, Ohio, for Ralph H. Coleman, Trustee.

WOODS, Referee.

I, William B. Woods, Referee in Bankruptcy, in charge of the above proceedings, do hereby certify:

That in the course of the proceeding, Ralph H. Coleman, Receiver and later Trustee of bankrupt, filed his Petition to Sell all the assets of the Chas. M. Ingersoll Co., bankrupt; to this petition

the John Deere Plow Co. of Columbus, Ohio, filed its answer and cross-petition claiming on two causes of action, on the 1952 contract there is a balance due of $15,577.24, on the 1953 contract there is a balance due of $7,515.40; and also claimed that its products were sold to bankrupt on said conditional sale contracts duly executed and recorded under Ohio law, and prayed for the immediate possession of the chattels remaining not sold by the bankrupt at bankruptcy and then in the possession of the Trustee.

The Trustee replied, claiming that no valid lien had been effected and that only ordinary sales had been made to bankrupt, and at best that only a sale on consignment had been attempted. Following the auction sale, the Deere Plow Co. elected to take the chattels claimed under its conditional sales contracts, which had been offered for sale at the auction, at the auction bid price of $15,895; and gave its bond to the Trustee of bankrupt estate in that amount to be paid if its lien was later found invalid by the Bankruptcy Court.

Upon hearing had on the issues raised, an order holding said lien valid was entered on November 23, 1953. Thereafter being aggrieved thereat, the Trustee filed his Petition for Review of the referee's order holding valid the lien of the conditional sales contracts.

## Statement of the Case.

For answer to the Trustee's petition to sell, the Deere Plow Co. asks for immediate possession of the chattels not sold by the bankrupt, which were delivered to bankrupt on the two conditional sale contracts which were as follows:

1952 contract of John Deere Plow Co. with the bankrupt is for $106,379.28, Exhibit A, for goods sold to bankrupt by the Deere Plow Co., and to be delivered as called for, executed September 26–28, 1951, affidavit of amount due executed March 7, 1952, No. 500219 filed with the Recorder of Cuyahoga County, Ohio, March 10, 1952; and

1953 contract of John Deere Plow Co. with the bankrupt is for $73,666.08, Exhibit B, for goods sold to bankrupt by the Deere Plow Co., and to be delivered as called for, executed November 10–13, 1952, affidavit of amount due executed April 8, 1953, No. 597454 filed with the Recorder of Cuyahoga County, Ohio, April 13, 1953.

At the filing of the bankruptcy petition on May 2, 1953, the following is a summary of the account of Charles M. Ingersoll Co., bankrupt, with Deere Plow Co., which claims the two conditional contract sales of chattels, that is, for agricultural implements with bankrupt and shows the following:

|  | Machines Billed and delivered | Paid by Bankrupt | Bal. due Deere |
|---|---|---|---|
| 1952 Contract $106,379.28 | $64,995.68 | $49,321.13 | $15,577.24 |
| 1953 Contract $73,666.08 | $11,687.67 | $ 4,120.06 | $ 7,515.40 |
|  | Balance due Deere Co. in the two contracts | | $23,092.64 |

Sale price at auction
of chattels unsold by bankrupt
$15,895.00

(The balance due Deere Plow Co. for both years is $23,092.65, for which amount there is an error of $149.49 in the testimony or computation; and as same is in favor of the Trustee, the error is disregarded with the consent of both parties.)

Chattels claimed on contract by Deere Plow Co., held by bankrupt, and described in said two contracts, contract price, $23,092.64; at auction a bid of $15,895 was received for said chattels; and Deere Plow Co. elected to take said

unsold chattels at bid price, in event its claimed contracts of conditional sales and its liens are later found invalid by this court.

The two contracts, Exhibits A and B are in pamphlet form consisting of 24 pages for Exhibit A and 12 pages for Exhibit B, printed on bond paper with this language on the first page of both contracts: "John Deere 1953 (or 1952) Contract—The prices and terms applying to goods ordered herein or subsequently ordered hereunder shall be the prices and terms established by the Plow Company for its wholesale trade and in effect on the date of shipment."

Exhibit A consists of 24 pages and Exhibit B consists of 12 pages printed in small type, the date and signatures of the parties being on page 8 with amount due on the contract in the affidavit by the credit manager of the Deere Plow Co. on page 9 of each contract, said affidavits containing the amounts due on each of said contracts ($106,379.28 and $73,666.08), the recording stamp of the Recorder of Cuyahoga County is attached to page 24 of Exhibit A and to page 12 of Exhibit B. Evidently the printed forms are designed to be used in any state requiring filing or recording to effect a lien in goods sold.

The contracts are each compact instruments in pamphlet form with two staples in the back of each holding the pages together. Attached to the last inside page of Exhibit A is the copy entitled "contract specifications" containing 4 pages, 8½ by 10½ inches of typewritten letter size pages containing itemization of the machines or chattels with complete description of each machine at the price for which the sale is made to buyer as per the contract. This is firmly attached to the printed part of the contract with 9 staples and scotch tape. Attached to the inside page of pamphlet Exhibit B, are also 4 pages with 8½ by 10½ inches of typewritten letter size containing an itemization of machines and chattels sold with complete description and prices and as in the case of Exhibit A. This exhibit is also attached by 8 staples and scotch

tape and typewritten pages, in each instance, are fastened at the top with 2 staples at the left margin of the page of the printed contract; and the typewritten pages are folded in each contract so that it could not be said that the typewritten pages can be easily removed from the printed part of said contracts.

Finding of Facts

(1) That the Chas. M. Ingersoll Co. of Rocky River, Ohio, an Ohio corporation dealing in agricultural implements, filed its petition in bankruptcy on May 2, 1953, and Ralph H. Coleman is the duly elected, qualified, and acting Trustee of said bankrupt.

(2) That the John Deere Plow Co. of Columbus, Ohio, answering defendant and cross-petitioner, is and was at all times herein an Ohio corporation, engaged in selling farm equipment at wholesale to retail dealers.

(3) That for a number of years the defendant, John Deere Plow Co. of Columbus, and the bankrupt had annually executed a contract for the conditional sale and delivery to the bankrupt of the farm equipment required by the bankrupt for sale during the following year.

(4) That in the fall of 1951 the bankrupt and the defendant, John Deere Plow Co. of Columbus entered into a conditional sales contract known as the John Deere 1952 contract which has been introduced as John Deer's Exhibit "A" and under which the bankrupt contracted to buy and the defendant contracted to sell specified farm equipment in the amount of $106,379.28. Said contract was executed on September 26, 1951 and duly recorded March 10, 1952 with the Recorder of Cuyahoga County, being known as County Recorder's No. 500219; and that the affidavit which is part of this contract was duly executed on March 7, 1952, setting forth the amount due.

(5) That in the fall of 1952, the bankrupt and the defendant, John Deere Plow Co. of Columbus entered into a conditional sales contract known as the John Deere 1953 contract, which has been introduced as John Deere's Exhibit "B"

and under which the bankrupt contracted to buy and the respondent contracted to sell specified farm equipment in the amount of $73,666.08; said contract was executed on the 13th day of November, 1952 and duly recorded April 13, 1953 with the Recorder of Cuyahoga County, being known as County Recorder's No. 597454; and that the affidavit which is part of this contract was duly executed on April 8, 1953, setting forth the amount due.

(6) That under each of these contracts the bankrupt was permitted to sell the farm equipment purchased by him from the defendant, John Deere Plow Co. of Columbus, but only to purchasers in the ordinary course of business, and was required to account for and hold the proceeds of such sales in trust for the respondent.

(7) That the practice established between the parties was for the defendant to call at the bankrupt's place of business each and every month to check his inventory and receive payment on all farm equipment that had been sold by the bankrupt at the time of the monthly inventory or which had become due and payable at that time; and that the last monthly inventory and payment received for farm equipment sold by the bankrupt was the middle of April, 1953, only a few weeks before bankruptcy.

(8) That after the check up by the defendant in April, 1953, the bankrupt did pay the defendant in full for all farm equipment sold to the date of the last check up.

(9) That the contracts entered into by and between the defendant, and the bankrupt are printed pamphlet forms. The 1952 conditional sales contract (J.D. Exhibit A), in addition to the outside covers, consisted of 12 pages, printed on bond paper. These contracts provided that title to all goods ordered therewith remained in the defendant until full payment had been made for them. Attached to the inside page of Exhibit "A" (1952 contract) were four pages identified as contract specifications which contain an itemization of the machines or chattels with complete description of each machine and the price for which the sale is made to the buyer as per the contract. These four pages are firmly attached to the printed part of the contract. Also attached to the inside page of Exhibit "B" (1953 contract) there is firmly attached four pages with the same identification and containing an itemization of the machines and chattels sold with a complete description and price as in the case of Exhibit "A". These pages are securely attached to Exhibit "B".

(10) That at the time of bankruptcy there remained in the possession of the Ingersoll Co. $23,092.64 in chattels consisting of farm equipment which had not been paid for by the bankrupt nor sold by it and which were covered under the two conditional sales contracts (J.D. Exhibit A & B), duly recorded by the defendant.

(11) That the chattels involved in these conditional sales contracts were sold at public sale for $15,895; that the John Deere Plow Co. elected to take these chattels at the auction figure and gave a bond to the trustee for that amount.

## Conclusions of Law

(1) That the conditional sales contracts of the John Deere Plow Co. of Columbus, as set forth in John Deere Exhibit A & B, are valid conditional sales contracts and constitute valid liens against the trustee in bankruptcy under Ohio General Code 8568, Revised Code Section 1319.11.

(2) That the two conditional sales contracts filed for record contained a proper description of the property.

(3) That the affidavits attached to the contracts (J.D. Exhibit A & B) properly stated the defendant's claim and were in conformity with Ohio General Code Revised Section 1319.11.

(4) That the answering defendant, the John Deere Plow Co. of Columbus, Ohio, having valid liens of said chattels, is entitled to an order of this court directing the trustee in bankruptcy to relinquish his claim on said chattels which said cross-petitioner is entitled to re-

possession, and the terms of the bond given by cross-petitioner to the trustee having been complied with said bond is cancelled.

### Memorandum

This controversy concerns the application of the Ohio law to the facts as presented here.

The language in the Deere Co. contract with the bankrupt, Exhibit A and B, is as follows, page 3, 14(a):

"The title to and ownership of all goods delivered hereunder by the Company to the Dealer is and shall remain vested in the Company until full payment for all such goods shall have been made to the Company, in cash or as provided in any finance plan which is in effect between the parties. It is understood and agreed that this contract is not divisible as to the goods delivered hereunder and that the Company's title to and ownership of all goods so delivered shall continue until full payment, as aforesaid, has been made for each and every article of said goods * * *."

The Ohio statute now concerned in this controversy was enacted in 1925, and is as follows, old Sec. G.C. 8568, Revised Code Sec. 1319.11:

"When personal property is sold to a person to be paid for in whole or part in installments, or is leased, rented, hired, or delivered to another on condition that it will belong to the person purchasing, leasing, renting, hiring, or receiving it, when the amount paid is a certain sum, or the value of the property, the title to it to remain in the vendor, lessor, renter, hirer, or deliverer thereof, until such sum or the value of the property or any part thereof has been paid, such condition, in regard to the title so remaining until payment, shall be void as to all subsequent purchasers and mortgagees in good faith and for value, and creditors unless the conditions are evidenced by writing, signed by the purchaser, lessee, renter, hirer, or receiver thereof, and also a statement thereon, under oath, made by the person so selling, leasing, or delivering the property, his agent or attorney, of the amount of the claim, or a true copy thereof, with an affidavit that it is a copy, is deposited with the county recorder of the county where the person signing the instrument resides at the time of its execution, * *."

As appears from the evidence, the 1952 contract for $106,379.28 was executed September 26, 1951, filed March 10, 1952, and the 1953 contract for $73,666.08 was executed November 10, 1952, and filed April 13, 1953.

The chattels sold were each set out and accurately described in each contract, only the time of delivery was open and the deliveries of the described machines were to be made as called for by the Charles M. Ingersoll Co.

Pursuant to the contracts, the Ingersoll Co. had requested and been delivered chattels as described in the contracts and had not paid Deere Co. for chattels contracted for at $23,092.64, as per the two contracts, which chattels Ingersoll Co. had on hand at bankruptcy. For these the Trustee received a bid of $15,895 at the auction sale, and Deere Co. elected to take these chattels at the auction figure and gave bond to the Trustee for that amount, to be paid if its claim of lien was found invalid by the Bankruptcy Court.

Proceeding to examine the Ohio law, on the lien of conditional sale contracts, there are found many cases which have considered this conditional sale statute together with its recording requirements.

Early in this state, the Supreme Court held that a stipulation in a mortgage of goods, that the mortgagor shall retain possession and sell the goods in the usual retail way, paying over the money received therefor to the mortgagee, as the goods are sold, does not render the mortgage, per se, fraudulent and void as against other creditors of the mortgagor.

Kleine, Hegger & Co. v. L. Katzenberger & Co., 1870, 20 Ohio St. 110.

It may be true as urged by Trustee's counsel, that Ohio courts have not considered a situation of conditional sales where the chattels were to be resold by the buyer and account made to the vendor seller, here the Deere Co. as a cross petitioner. The Bankruptcy Act specifically provides that the trustee in bankruptcy acquires the rights of the bankrupt, and the rights of such Trustee as inferior to those of a vendor under a contract of conditional sale, if the provisions of this section are complied with: York Manufacturing Co. v. Cassell, 201 U.S. 344, 26 S.Ct. 481, 50 L.Ed. 782, 15 Ohio F.Dec. 238, 4 O.L.R. 327.

This question of a conditional sale contract which was recorded, and the affidavit sets forth the full amount of the claim, even though the chattels were to be delivered in the future, was considered in Lawyers Cooperative Publishing Co. v. Rose, 1938, 60 Ohio App. 258, 20 N.E.2d 720. The Court of Appeals of Cuyahoga County held that this was a proper and valid affidavit as required under Section 8568 of Ohio General Code, and the court said, 60 Ohio App. at page 262, 20 N.E.2d at page 722:

> "This is an entire contract wherein the respective obligations of each party are set forth. In brief, the company undertakes to deliver volumes as published until the complete set is published. The purchaser obligates himself to receive these volumes and to pay for them in accordance with the mode of payment provided for in the contract. * * * When we speak of the balance due under the contract, we have in mind the entire contract and the entire amount which will be due when the complete set is delivered. * * "

Also in considering the law of Ohio as to trust receipts, as arises in the contract of automobile dealers and finance companies, the Court of Appeals, 6th circuit (1934) In re Collinwood Motor Sales, Inc., 72 F.2d 137, 26 Am.Bankr. Rep.,N.S., 296, Judge Allen said that such contracts were like conditional sales contracts and their effect as against the trustee in bankruptcy is to be determined by the law of the State of Ohio. The judge went on to say, 72 F.2d at page 139, that the trust receipt for a transaction is like a conditional sale contract and "established a valid lien (1) because of the decisions of the Supreme Court of Ohio relating to conditional sales; (2) because of the terms of the recording act; and (3) because of the decisions of this court applicable to contracts of this nature executed in Ohio."

Conditional Sale contracts such as considered here, where the chattels are to be delivered over a period of time, and the contract with its resulting lien are made for total amount of the purchase, have been held valid in other states. Kagan v. Industrial Washing Machine Corp., 1 Cir., 1950, 182 F.2d 139. International Harvester Co. of America v. Poduska, 1930, 211 Iowa 892, 232 N.W. 67, 71 A.L.R. 973. The arguments raised by counsel for the Trustee in this case were substantially similar to those raised and rejected in John Deere Plow Co. of Moline v. Turner, 9 Cir., 1933, 66 F.2d 653, 23 Am.Bankr. Rep.,N.S., 640, which concerned a California statute.

The International Harvester Co. of America has a similar contract to that used by the John Deere Plow Co. of Columbus. The International Harvester Co. case, supra, decided many of the problems that the Trustee is presenting to this court. Other cases to the same effect in other states are as follows: John Deere Plow Co. of Moline v. Edgar Farmer Store Co., 1913, 154 Wis. 490, 143 N.W. 194; John Deere Plow Co. v. Hamilton, 7 Cir., 1927, 19 F.2d 965; Dunlop v. Mercer, 8 Cir., 1907, 156 F. 545; Monitor Drill Co. v. Mercer, 8 Cir., 1908, 163 F. 943, 20 L.R.A.,N.S., 1065. Many other cases holding conditional sales contracts valid where resale is permitted by vendee in regular course of business, and cited in brief of counsel showing like decisions of several other states.

Counsel for Trustee urges that the Deere contracts, Exhibits A and B, fail to comply with the statute, as to having the affidavit on the contract. Suffice to say, examination of the Deere contracts, and on the proof offered, such failure to comply with the statute has not been established in this proceeding.

In the Chinese Temple case (In re Chinese Temple Restaurant Co.), 1931, 54 F.2d 945, 18 Am.Bankr.Rep.,N.S., 487, where the district court held under the Ohio statute that fastening the paper with affidavit to the conditional sales contract with staples did not meet the statute requirement, but that the affidavit must be "thereon" the contract. After that case in 1943, the Ohio legislature amended the law so that G.C. § 8564 now provides that the affidavit must be "placed thereon or attached thereto".

Where the description of personal property was not firmly attached to the chattel mortgage which contained no description of the personal property to be conveyed and a sheet filed is with the instrument of the itemization of chattels, the referee held the instrument could not be regarded as part of the mortgage since it was not firmly attached to the instrument and did not refer to the instrument, holding that there was no lien on the chattel. Such finding was reversed on review by his Honor Charles McNamee, Re: Reuber, et al., dba Mt. Pleasant Family Laundry, #69224 in this District Court (February, 1953), so the rule of the Chinese Temple case can be of no help to the Trustee in this proceeding.

### Conclusion

The conclusion or finding is that the answering cross-petitioner, John Deere Plow Co., is found to have a valid lien on the chattels claimed and is entitled to their possession as ordered by the Bankruptcy Court.

Herewith are handed up for your consideration pleadings, briefs, journal entries, and all necessary papers in this proceeding.

JONES, Chief Judge.

This review has to do with the validity, as security, of two conditional sale contracts executed by the bankrupt and the John Deere Plow Company, respondent and cross-petitioner. The John Deere Company claims the right to repossess chattels delivered to the bankrupt under the contracts, and not sold at the time of bankruptcy. It has elected to take the auction bid price of these chattels if its claim to a lien is sustained.

The Referee in his order of November 23, 1953, held that the John Deere Company was entitled to a lien for the unpaid balance due on the contracts, valid against the Trustee. The Trustee seeks to set aside this order.

■ The questions raised in this review depend in part upon factual determinations by the Referee. In reviewing findings of fact, the court may not disturb the Referee's findings unless it finds them to be clearly erroneous.

■ Decisions by the Ohio courts and courts of other jurisdictions establish the principles applicable to conditional sales and analogous security devices. A reservation by the seller of title to chattels to be offered for resale may be sustained where the stock of goods is identified and segregated, and sufficient limitation is placed upon the vendee so that he may not dispose of the goods as his own in the usual course of trade; provided, the transaction is bona fide and the agreement is in fact carried out by the parties in good faith, free of any intent or purpose to hinder or defraud other creditors. Francisco v. Ryan, 1896, 54 Ohio St. 307, 43 N.E. 1045; Kleine, Hegger & Co. v. L. Katzenberger & Co., 1870, 20 O.S. 110; Assignee of Smith v. Volkmore, 1910, 18 Ohio Cir.Ct. R., N.S., 119; Kagan v. Industrial Washing Machine Corp., 1 Cir., 1950, 182 F.2d 139; Garrett & Co. v. Mercantile Nat. Bank, 5 Cir., 1941, 120 F.2d 821; John Deere Plow Co. v. Turner, 9 Cir., 1933, 66 F.2d 653; Dunlop v. Mercer, 8 Cir., 1907, 156 F. 545.

■ The contracts in suit were executed annually and covered the sale and delivery of farm equipment to the bankrupt during the following year. Referee's Findings of Fact 3, 4 and 5. They contain affidavits of claim and attached specifications describing the chattels sold. F.F. 4, 5, 9. They were duly recorded in compliance with the state statute. Ohio Revised Code, Sec. 1319.11. F.F. 4, 5.

The Referee concluded that the contracts are valid conditional sales and create valid liens against the Trustee (C.L. 1). He further concluded that the requirements of the Ohio statute have been met with respect to affidavit of claim and description of the property. (C.L. 2, 3.)

There is substantial evidence in the record to support his conclusions.

■ The contracts reserved title in the seller until full payment was made for "every article" of goods to be delivered. Exhibits A and B, p. 3, Sec. 14a. Sales by the dealer might be made "in the ordinary course of retail business" but only when he obtained signed orders and full settlement from the purchaser, Exhibits A and B, p. 3, Sec. 14c. Proceeds of a sale were to be received and held by the dealer in trust for the seller and subject to its order. Idem. Cash proceeds were to be turned over to the seller "as and when collected by the dealer". Idem.

The bankrupt could not dispose of the goods as his own and for his own account. Restrictions were placed upon resale by the contract terms mentioned. Also, the contracts were "policed" by a monthly accounting and a physical check of inventory. These are important items affecting validity.

A trust receipt device contemplating the resale of automobiles has been upheld as a valid security by the Court of Appeals, for the Sixth Circuit. In re Collinwood Motor Sales, Inc., 6 Cir., 1934, 72 F.2d 137. It is true that the trust receipt arrangement required payment prior to or simultaneously with the resale. Like the contracts in suit, however, the object and purpose of the trust device was to facilitate the resale of the chattels.

There is no greater likelihood that creditors of the dealer will be deceived and hindered by the contract arrangement which is presently challenged. In such circumstances, I can find no adequate ground to distinguish it from the trust receipt arrangement.

Decision as to the validity of a security device must ultimately involve policy considerations affecting the mercantile trade. Respondent rightly contends that creditors of a dealer are in fact benefited by a purchase money security device. Goods are made available which enable the dealer to continue in business. A creditor's chances of receiving ultimate settlement are enhanced.

Implicit in the Referee's findings is the ultimate conclusion that the transaction here was bona fide and carried out by the parties in good faith. I agree with the Referee that the security should be held valid.

Support for the Referee's conclusions as to the sufficiency of the affidavit of claim and description of the property is found in controlling decisions.

■ The entire consideration need not be paid prior to the time the affidavit of claim is made; if the affidavit is made in good faith. Wells v. Rutkowski, 6 Cir., 1934, 69 F.2d 143; In re Morgan, 6 Cir., 1928, 26 F.2d 183; Lawyers Cooperative Publishing Co. v. Rose, 1938, 60 Ohio App. 258, 20 N.E.2d 720. There is no evidence here that the affidavits were fraudulent. The Referee properly concluded that they were in compliance with the statute. (C.L. 3.)

■■ A description of property in a security which will enable third persons to identify the property covered, aided by inquiries which the instrument indicates and directs, is sufficient. Connecticut Mutual Life Ins. Co. v. Shelly Seed Corp., 1933, 46 Ohio App. 548, 189 N.E. 654; National Cash Register Co. v.

Marks, 6 Cir., 1926, 13 F.2d 628; Raeuber v. Central Nat. Bank, D.C.N.D. Ohio, 112 F.Supp. 865. The Referee found and concluded that the specifications and statements which were "firmly attached" to the contracts satisfied this test. F.F. 9, C.L. 2. I agree with his conclusion.

Unquestionably, the purpose of the statute to place third persons on notice and inquiry as to encumbrances upon property in the hands of a person seeking credit was accomplished here.

The order of the Referee will be confirmed, and the petition for review dismissed.