United States District Court
D. Delaware.

March 2, 1949.

Vincent A. Theisen (of Southerland. Berl & Potter), of Wilmington, Del., for petitioner Joseph Rizzo.

John S. Walker, of Wilmington, Del., for Watkins Electric Company and Betty Brothers.

William Prickett, of Wilmington, Del., for James F. Toner, Jr.

Robert H. Barnett, of Wilmington, Del., amicus curiæ.

LEAHY, Chief Judge.

Error is charged in that the Referee wrongly computed the amounts which were to be paid to his court for the Referee's Salary Fund and his Expense Fund.

The Trustee sought to sell certain real estate free of liens. The appraised value of the real estate was $148,000, a figure which was above the lien charges. At sale the properties brought only $125,000 by the bid of one who, by that time, held all the mortgage lien charges. The Referee entered an order and charged the entire proceeds of the sale with the cost of the sale which included 3% of $125,000, half of which was to go to the Referee's Salary Fund and half to the Expense Fund. Rizzo, the lienholder, filed a petition to review, claiming that the sum of $125,000 did not constitute "Net Proceeds Realized" from the sale. Before deciding the point, it is necessary to review certain recent legislation.

The Judicial Conference of Senior Circuit Judges is empowered to establish fees and charges in bankruptcy proceedings. § 4, P.L. 464, 11 U.S.C.A. § 65. By § 6 of P.L. 464, § 40 of the Bankruptcy Act was amended, 11 U.S.C.A. § 68, and part c(2) now provides:

"(2) Additional fees for the referees' salary fund and for the referees' expense fund shall be charged, in accordance with the schedules fixed by the conference (a) against each estate wholly or partially liquidated in a bankruptcy proceeding, and be computed upon the net proceeds realized; * * *. Such schedules of fees may be revised by the Director, with the approval of the conference, not more than once during each calendar year, so that the total amount of fees, allowances and charges collected and to be collected from all sources for the referees' salary fund and for the referees' expense fund will, as near as may be, equal for each fund, respectively, the total amount of salaries paid and to be paid to referees in active service, and the total amount of their expenses: Provided, however, That such schedules of fees shall not be so revised for any year that the total collections estimated by the Director for such year shall exceed by more

than 10 per centum the total collections in the preceding year. The Director, with the approval of the conference, may make, and from time to time amend, rules and regulations prescribing methods for determining net proceeds realized in asset cases, * * * prescribing the procedure for collection by the clerk of fees and allowances for the referees' salary fund and the referees' expense fund; and providing for the effective administration of the provisions of this paragraph (2)."

And as amended § c(4) now provides:

"(4) A referee's salary fund and a referee's expense fund shall be established in the Treasury of the United States, and the amounts of the various fees and allowances collected by the clerks for the services of referees, and for their expenses, * * * shall be covered into the Treasury of the United States for the account of such salary fund and expense fund. * * *"

On April 21, 1947, there was a special session of the Judicial Conference. The Report (p. 17 et seq.) of that meeting shows that, after a recital of the legislative history and the recommendations of the Conference Committee, it was provided:

"Thereupon, the conference proceeded to consider the problems incident to the proposals and the program district by district and circuit by circuit, and with respect to 'the number of referees, full-time and part-time, to be appointed, the respective territories which they shall serve, including the regular place of office and the places at which courts shall be held, their respective salaries, and schedules of graduated additional fees to be charged in asset, arrangement and wage-earner cases', made the following determinations as required by Section 37b(1) of the Bankruptcy Act, as amended by Section 4 of the amendatory act:

\* \* \* \* \* \*

"Schedule of Additional Fees and Charges

"Fees to be charged in Asset, Arrangement, and Wage-Earner Cases for the Referees' Salary Fund

"Two percent on net realization in straight bankruptcy cases; 1 percent on total obligations paid or extended in Chapter XI cases; 1 percent upon payments made by or for the debtor in Chapter XIII cases.

"Charges to be made in Asset, Arrangement, and Wage-Earner Cases for the Referees' Expense Fund

"\* \* \*. One percent on net realization in straight bankruptcy cases; \* \* \*

\* \* \* \* \* \*

"Pursuant to Section 40c (2) of the Bankruptcy Act as amended the following rules and regulations prescribing the methods for determining the net proceeds realized in asset cases, fair values of considerations, other than money distributable in arrangement cases, and payments actually made by or for a debtor under the plan in wage-earner cases, were recommended by the Director and, upon a favorable report by the Bankruptcy Committee, were approved by the Conference:

"1. Determination of net proceeds realized.

"In determining the amount of net proceeds realized in asset cases for the purpose of Section 40c (2) of the Bankruptcy Act as amended, the term 'net proceeds realized in asset cases' shall mean, in the case of sale or liquidation, *the amount of money coming into the estate as assets of such estate* or, if not sold or liquidated the fair cash market value of all property coming into the estate as assets of such estate, exclusive of all statutory exemptions whether State or Federal and exclusive of all expenses directly incurred in the operation of the debtor's business after bankruptcy; provided, however, that where property is sold or transferred subject to a valid existing mortgage, lien or other encumbrance, the amount of such mortgage, lien or other encumbrance not affected by such sale shall not be included in determining the amount of net proceeds realized." (Emphasis added.)

The effective date was fixed for July 1, 1947.

At the session of the Judicial Conference on September 25, 1947, the schedule of fees was revised to an allocation of 1½% each to the Referee's Salary Fund and Expense Fund. The Report (p. 14) states:

"In view of the changed conditions and circumstances which necessitated a revision

968

in the estimates of income and expense requirements of the Referees' Salary Fund and the Referees' Expense Fund, respectively, the Conference approved a change in the allocation of the additional charges assessed in asset cases under Section 40c (2) so that, effective as to all cases filed on and after January 1, 1948, a sum equal to $1\frac{1}{2}\%$ of the additional charges assessed will be allocated to each of the funds."

It is under the above statutes and rules that the Referee took action.

The lienholder Rizzo relies on that provision of the Report (1947, pp. 41, 42), which states:

"Provided, however, that where property is sold or transferred subject to a valid existing mortgage, lien or other encumbrance, the amount of such mortgage, lien or other encumbrance not affected by such sale shall not be included in determining the amount of net proceeds realized."

Under the facts, the quoted provision does not apply for here the sale was made specifically free and clear of liens. Where a lienholder consents to a sale free and clear and irrespective of whether the sale brings less than enough to discharge the lien, the proceeds are chargeable with the costs of the sale and other administrative expenses. Collier on Bankruptcy, 14th Ed., pp. 1606, 1608. And this Circuit has so held. Miners Savings Bank of Pittston v. Joyce, 3 Cir., 97 F.2d 973, 977.

The lienholder Rizzo has one further argument. He argues that the payments to the two Funds was error. The point has no substance. The moneys or credits received from the sale of the bankrupt's real estate free and clear of liens come into the estate as assets and as such they are chargeable with all expenses of administration of the real estate involved. No effort was made to tax the lien creditor with any costs of general administration.

Sur Petition of Review of Joseph Rizzo

The above petition of review having come on for hearing and argument on February 17, 1949, after a consideration of the record below, the arguments of counsel and the briefs for the parties, it is adjudged that no error was committed by the Referee's Court in applying the proceeds to the Salary and Expense Funds.