In re LA ROWE.
No. 17598.

United States District Court
D. Minnesota, Fourth Division.
June 12, 1950.

Grant W. Anderson, Minneapolis, Minn., for the petitioner Northwestern Nat. Bank of Minneapolis.

C. J. Wagner, Minneapolis, Minn., for the trustee.

·JOYCE, District Judge.

This matter came on for hearing on a petition to review an order of the referee in bankruptcy dated August 19, 1949. In this order the referee ordered the trustee to withhold, (1) three per cent of the total moneys due the petitioning secured creditor and to pay the same to the Clerk of Court for credit to the referees' salary and expense. funds, and (2) the sum of $900 representing the petitioner's share of the costs incurred by the trustee in the care, custody and liquidation of encumbered property.

The debtor was adjudicated a bankrupt on May 13, 1948. Petitioner, Northwestern National Bank of Minneapolis, held chattel mortgages on a portion of the bankrupt's equipment and machinery which was taken over by the trustee. On June 28, 1948 the referee approved a sale by the trustee of certain property free and clear of encumbrances. Included in the property sold was the equipment upon which petitioner claimed mortgage liens in the amount of $23,015.84. Of the sale price of $26,375, the referee determined by order dated December 12, 1948 that $23,970 had been realized from the sale of the property covered by petitioner's chattel mortgages. Thus, the amount realized from the sale of the encumbered property exceeded the encumbrances thereon by $954.16. Over the objections of the trustee, the referee held petitioner's mortgage liens valid and enforceable and ordered payment to petitioner. This order of December 12, 1948 further provided "that the bank shall bear, and the Trustee shall deduct from the lien payments herein provided for, all costs and expenses incurred by the Trustee in connection with the preservation, custody, care and liquidation by the Trustee of all the machinery and equipment involved in this controversy * * * and of the administration of affairs incidental thereto, and that if the parties to this controversy cannot agree upon the proper amount of such costs and expenses, then and in that event the Trustee shall seasonably bring on for hearing the matter of the determination thereof by the Referee".

Thereafter, the trustee and petitioner agreed that, subject to approval by the referee, the trustee should be paid $900 in reimbursement for costs and expenses incurred in connection with the care, custody, preservation and liquidation of the encumbered property. The trustee understood the agreement to be that the $900 should be deducted from the amount payable on petitioner's claims. Petitioner contends the agreement merely called for payment from the proceeds of the sale of the encumbered property, and, since the proceeds realized exceeded petitioner's lien claims by more than $900, the payment due petitioner remained unaffected by the agreement. After hearings relating to the assessment of fees and expenses had been held, the referee entered the order under review. This order of August 19, 1949, in addition to adopting findings stipulated to by the trustee and petitioner, found as a fact that petitioner had impliedly consented to the sale of the encumbered property free and clear of petitioner's liens. Petitioner contends that the referee erred in finding an implied consent upon its part to the sale free and clear and in ordering the trustee to withhold from payment of its lien claim any part of the fees and expenses.

■ Petitioner's denial of consent, either express or implied, to the sale of the encumbered property free and clear of liens is not borne out by the record before the court. Petitioner admits that it had knowledge of the fact that the sale was being made and offered no objection thereto. The trustee in his verified petition seeking authorization for the sale states that "the trustee has explained this sale to the Northwestern National Bank, and has their agreement to the property being sold, and that any liens that they may claim will attach to the proceeds". To escape the necessary conclusion of consent from this conduct, petitioner points to the fact that no written notice of the proposed sale was given as required by 11 U.S.C.A. § 94, sub. a(4), and claims that objection would have been made upon receipt of such notice. I fail to see where written notice would have added anything to the knowledge of the sale which petitioner admits having,

and conclude, therefore, that its omission is of no significance on the question of petitioner's consent. The record fully sustains the referee's finding that petitioner impliedly consented to the sale of the encumbered property free and clear of liens.

It is also claimed that the referee erred in requiring petitioner to pay any part of the assessment for the referees' salary and expense funds, or of the costs and expenses incurred by the trustee in the preservation and liquidation of the encumbered property.

### Payments to Referees' Salary and Expense Funds

Section 40, sub. c(2) of the Bankruptcy Act, as amended, 11 U.S.C.A. § 68, sub. c(2), provides: "(2) Additional fees for the referees' salary fund and for the referees' expense fund shall be charged, in accordance with the schedules fixed by the conference (a) against each estate wholly or partially liquidated in a bankruptcy proceeding, and be computed upon the net proceeds realized; * * *."

Pursuant to the authority thus vested in it, the Conference of Senior Circuit Judges, at the April 1947 and September 1947 sessions, fixed the fees for the referees' salary fund in straight bankruptcy cases at 1½% and the charges for the referees' expense fund in straight bankruptcy cases at 1½%. The Conference further provided that, "In determining the amount of net proceeds realized in asset cases for the purpose of Section 40, sub. c(2) of the Bankruptcy Act as amended, the term 'net proceeds realized in asset cases' shall mean, in the case of sale or liquidation, the amount of money coming into the estate of a bankrupt as assets of such estate * * *; Provided, however, that where property is sold or transferred subject to a valid existing mortgage, lien or other encumbrance, the amount of such mortgage, lien or other encumbrance not affected by such sale shall not be included in determining the amount of net proceeds realized".

On the basis of the foregoing statute and Conference provision, the referee imposed the 3% assessment on the funds payable to petitioner on its lien claims.

Petitioner contends that the referee erred in two respects with reference to the assessments thus made. First, it is argued that the phrase "net proceeds realized" in Section 40, sub. c(2) of the Bankruptcy Act as amended, 11 U.S.C.A. § 68, sub. c(2), should be read as "net proceeds realized for the general estate", and that the 3% assessment for the benefit of the referees' salary and expense funds should not, therefore, be computed on the basis of funds coming into the estate subject to liens. If this argument be accepted, Section 40, sub. c(2) as amended works a decided change in the law as it existed prior to 1947. The 1903 Amendment to the Bankruptcy Act had as one purpose a change in the law designed to permit referees to base their fees on the total moneys disbursed to creditors by trustees regardless of whether such disbursements were to secured or unsecured creditors. In re Columbia Cotton Oil & Provision Corp., 4 Cir., 210 F. 824; Collier on Bankruptcy, 14th Ed., Sec. 40.06, p. 1551. There is nothing to indicate that Congress, in 1946, intended to depart from the long established practice in this regard.

 Reading Section 40, sub. c(2), as amended, I believe it clear that "net proceeds realized" refers to the amount realized from the liquidation of the bankrupt's assets, and not just to that portion thereof which constitutes the equity of the general creditors. That the Conference so construed the phrase is apparent from the definition adopted by that body. In other words, "net proceeds realized" would be the balance remaining after the expenses incurred by a trustee in effecting a liquidation had been deducted from the total sale price of assets. The only cases which the court has found dealing with the question have held that the assessments for the referees' salary and expense funds should be computed upon all moneys coming into the estate whether subject to lien or not. Reconstruction Finance Corp. v. Cohen, 10 Cir., 179 F.2d 773; In re Stephen R. Jackson & Co., D.C.Del., 82 F.Supp. 966. This court so holds.

Secondly, petitioner claims that even if the 3% assessment be computed upon proceeds coming into the estate subject to liens, the assessment should be paid from funds of the general estate. The referee, on the other hand, takes the position that assessments levied on funds subject to lien must, under the terms of Section 40, sub. c(2) as amended and the Conference provision, be paid by the secured creditor. To sustain this position, the referee points to the fact that the Conference used the words, "the amount of money coming into the estate", in defining "net proceeds realized" and finds therein a clearly expressed intent upon the part of the Conference that the 3% assessment be paid from funds due the secured creditor. I fail to see where this intent is any more clearly expressed in the 1946 Amendment and conference provision than it was in the law governing before 1947. Prior to 1947, Section 40 of the Bankruptcy Act, 11 U.S.C.A. § 68, sub. a provided for referees' commissions of 1% "on all moneys disbursed to creditors by the trustee". While this was construed as permitting fees to be computed on the basis of payments made to both secured and unsecured creditors, there can be no question that it was not construed by the courts as making mandatory the payment of fees from funds due secured creditors. See 4 Collier on Bankruptcy, Sec. 70.99, pp. 1604–1617.

In Reconstruction Finance Corp. v. Cohen supra, 179 F.2d at page 776, the court had the following to say with respect to the present version of Section 40 of the Bankruptcy Act: "But Section 40, sub. c(2) of the Bankruptcy Act, supra, authorizing additional fees for the referee's funds, does not concern itself with the question whether the fees in a case of this kind are paid out of funds available for the payment of a secured debt or from funds belonging to the general estate of the bankrupt. The exactions of the statute are satisfied when the full amount of the fees is charged against the estate and made available for coverage into the referee's funds, whether taken out of funds payable to the secured creditor or from funds belonging to the general estate." Similarly, in Re Stephen R. Jackson, supra, the court did not construe the 1946 Amendment to Section 40 and the Conference provision as requiring

payment from funds due a secured creditor. While the court did order payment to the referees' salary and expense funds from moneys due the secured creditor, it was prompted to do so by equitable considerations and by the rules applicable in that circuit prior to the 1946 Amendment.

Since my construction of Section 40, sub. c(2) and the Conference provision is in accord with the courts' views in the above cases, reference must be made to earlier decisions of this circuit to find the rule applicable to the facts of this case.

 In Rubenstein v. Nourse, 8 Cir., 70 F.2d 482, appellant held chattel mortgages on property of a bankrupt which was sold by the trustee free and clear of liens. Proceeds from the sale of the encumbered property exceeded the lien claims. The referee deducted from the amount of appellant's claim an amount found by the referee to be a proportionate share of the cost of administration, sale, taxes, and preservation of the encumbered property. The lower court approved this action by the referee. In ordering a modification of the order, the Circuit Court said, 70 F.2d at pages 484–485:

"It appears that the mortgaged property was sold for more than sufficient to pay in full all liens, leaving a surplus remaining in the general estate of the bankrupt. Notwithstanding this, however, the referee deducted from the amount of appellant's claim the sum of $2,601.70, on the theory that this amount was deductible as a proportionate share of the cost of administration, sale, taxes, and preservation of the property. We think this deduction was unwarranted. The lower court, in confirming an order of the referee selling the assets of the bankrupt, referring to the objections of certain secured creditors, said: 'They are assured payment in full for their claims when allowed and until they have been paid in full the title to all the assets of the bankrupt remains in the trustee and their liens are not jeopardized nor the properties back of them lessened in value.'

"We are of the view that it was error to assess against appellant these estimated costs of administration." (Citing cases.)

It is not clear whether the secured creditor who appealed in the Rubenstein case consented or objected to the sale free and clear. The court does advert to the "objections of certain secured creditors", but it nowhere appears whether the appellant was one of this group. However, it is clear that the decision reached by the court in the Rubenstein case was not made to turn upon the presence or absence of consent. I read the Rubenstein case as holding that where mortgaged property is sold free and clear by a trustee in bankruptcy for more than sufficient to pay in full all liens, leaving a surplus remaining in the general estate, the costs of administration, sale and preservation of the property must be paid from the general estate. Since the assessment for the referees' salary and expense funds is an administrative cost falling within the rule thus announced, it follows that the referee erred in ordering payment of this assessment from funds due petitioner. Therefore, the order of August 19, 1949, will, in this respect, be modified.

### Trustee's Costs and Expenses

The referee's order of August 19, 1949 required petitioner to pay $900 as its share of costs and expenses incurred by the trustee in connection with the care, custody and liquidation of the encumbered property. In the absence of any circumstances removing this portion of the order from the rule laid down in the Rubenstein case, this was error. However, I believe such circumstances are found in the present case.

An agreement was reached respecting the amount of costs and expenses incurred by the trustee. The only dispute concerns the funds from which payment was to be made. The trustee understood the agreement to call for payment from funds due petitioner. Petitioner, on the other hand, says the agreement called for payment from the general estate's equity in the proceeds of the sale. I believe the trustee's understanding of the agreement is the only one consistent with the circumstances surrounding the parties at the time the agreement was entered into.

 In the first place, the terms of the agreement reached must be determined in

the light of the referee's order of December 14, 1948. The order of that date provided that the trustee should deduct from the lien payments due petitioner the amount of costs and expenses incurred by the trustee in the preservation and sale of the encumbered property, and authorized the parties to fix the amount thereof. Review of this order was not sought by petitioner. On the contrary, petitioner in its brief says that, "Pursuant to the order the trustee and petitioner endeavored to agree upon the amount of the costs and expenses", but, in fact, no agreement was reached. The stipulated findings show otherwise. The parties did agree that, subject to approval by the referee, the trustee should be paid $900 for his costs and expenses. At that point the parties' authority to negotiate pursuant to the order of December 14, 1948 ended. That order called for a determination of the amount of the trustee's costs and expenses—not a determination of the funds from which payment was to be made. An agreement was reached with respect to the former; the latter had been previously determined.

In the second place, if petitioner's present position with respect to the terms of the agreement be accepted, we have a situation where petitioner purports to enter into an agreement to which it is not a proper party and concerning a matter in which it has no interest. It was not for petitioner to say what amount should be paid from the funds of others. As petitioner concedes, it was not concerned in any manner with amounts to be paid from the general estate of the bankrupt. It was concerned with payments to be made from lien funds. I conclude that the agreement with the trustee related to the matter which concerned petitioner, and no reason appears why it should not be bound by the agreement thus made.

The referee's order of August 19, 1949 will be modified so as to provide for payments to the referees' salary and expense funds from the general estate of the bankrupt. In all other respects said order is affirmed.