**In the Matter of Everett W. BOYER, Bankrupt.**

**No. 4316.**

United States District Court
D. Minnesota, Second Division.
April 18, 1955.

---

George E. MacKinnon, U. S. Atty., Keith D. Kennedy, Asst. U. S. Atty., St. Paul, Minn., for petitioner.

Lewis E. Solomon, St. Paul, Minn., for trustee.

DONOVAN, District Judge.

The United States of America (herein referred to as petitioner), for the Farmers Home Administration, an agency thereof, seeks review of an order of the Referee in Bankruptcy dated June 8, 1954, assessing fees of the trustee and the Referee out of the proceeds of the sale of certain mortgaged property. The Court is without benefit of a transcript. The facts pertaining to said assessment are necessarily abridged from the findings of the Referee.[1]

Petitioner was a secured creditor of the bankrupt. The indebtedness was evidenced by a promissory note dated August 1, 1952, in the principal sum of $5,-000 and secured by certain crop and chattel mortgages. The unpaid amount thereon was in excess of $4,000 on February 15, 1954, the date of filing of the voluntary petition in bankruptcy.

The Referee found that subsequent to the filing of the petition in bankruptcy and on the same day, February 15, 1954, the Farmers Home Administration, with knowledge of the prior filing of the petition in bankruptcy, and by arrangement with the bankrupt, conducted a voluntary auction sale, pursuant to which all of the assets of the bankrupt covered by the mortgage, and some assets not covered by the mortgage, were sold for the sum of $1834.78.[2] The Referee did not know about the auction sale until a few days before the first meeting of creditors. The proceeds of the sale were and are being held by a designated bank pending final court order as to distribution.

[1]. The Referee's findings are conclusive if not erroneous. See: In re Settem, D.C. Minn., 118 F.Supp. 897, 898; In re Chas. M. Ingersoll Co., D.C.Ohio, 119 F.Supp. 868, 875; In re Drowne, D.C.R.I., 124 F.Supp. 842, 843.

[2]. In one of its supporting affidavits, petitioner states that the sale was held without intent to deprive the bankrupt estate of any equity, but to save certain expenses and losses incident to advertising costs already incurred, and expense of feeding and caring for stock and property of bankrupt. Be that as it may, the petitioner invoked the power and machinery of the bankruptcy court and was dealing with property within the jurisdiction

On April 16, 1954, the United States filed its Proof of Secured Claim for the sum of $4290.66, including interest. After investigation and conferences between the Referee and attorneys and representatives of the Farmers Home Administration of St. Paul, the Referee, on June 8, 1954, filed his order dated May 20, 1954, providing, among other things, for the disposition by the trustee of proceeds of the sale amounting to $1834.78. The Referee directed the trustee to retain $67.50 covering items sold at the sale not covered by the mortgage; to pay four items of expenses incident to the sale (amounting to $107.15); to retain the trustee's commission as provided by law (amounting to $75.34), and 2% fees for the Referee's Salary and Expense funds (amounting to $35.34); the remaining balance of $1549.45 to be paid to the United States to apply on the debt of said agency.

The question for decision as certified by the Referee is whether, under the facts of this case, the Referee properly ordered the trustee to retain out of the proceeds of the sale of the mortgaged property the trustee's fees of $75.34 and the Referee's fees of $35.34, when the proceeds were not sufficient to pay the mortgage debt in full.[3]

It is the contention of petitioner that the Referee's order was erroneous and contrary to law.

At the outset it is apparent that this case is different from the usual case where the Referee orders a sale free and clear of the mortgage. This was a sale made after adjudication, without any formal authority from the Bankruptcy court. While it may be disputed that the sale was "conducted" by the Farm Home Administration, it cannot be denied, as the trustee points out, that the sale was held with the consent, approval, knowledge and for the benefit of the Farm Home Administration. It had knowledge, prior to the sale, that a petition in bankruptcy had been filed. As was noted supra, in marginal note 2, it was then dealing with property in "custodia legis." Mueller v. Nugent, 184 U.S. 1, 22 S.Ct. 269, 46 L.Ed. 405. The District Court had the exclusive right to administer the property of the bankrupt. Lazarus, Michel & Lazarus v. Prentice, 234 U.S. 263, 266, 34 S.Ct. 851, 58 L.Ed. 1305.

What, then, as to the assessment of expenses? The usual situation, as above noted, comes about with an order of the Court selling, free and clear of the mortgage, with the lien to follow the proceeds. In such instances, where the Referee has had an opportunity to exercise his discretion whether to order a sale, a number of courts have allowed expenses to be charged where the lienholder expressly or *impliedly consented to a sale.*[4] In re Stephen R. Jackson & Co., D.C.Del., 82 F.Supp. 966. In the instant case the Referee had no opportunity to exercise his discretion, but found himself with the proceeds of a sale of prop-

---

of the bankruptcy court upon the filing of the petition in bankruptcy. Straton v. New, 283 U.S. 318, 321, 51 S.Ct. 465, 75 L.Ed. 1060.

3. While petitioner questions the amount of assessment as made, and whether the Referee ought to have first applied the unencumbered assets, the order of the Referee in that respect will not be disturbed. The fundamental question for review is the right of assessment under the controlling facts.

4. In Collier, 14th Ed., the author, at pages 1606–1610, says:

"A great number of courts have adopted the preferable view that where the lien-holder expressly or impliedly consents to a sale free of liens and encumbrances, and irrespective of whether such sale brings less or more than enough to discharge the lien and interest thereon in full, the proceeds are chargeable with the actual costs of the sale, plus costs reasonably incurred in the preservation of the property and the proportion of the administrative expenses (such as referee's, receiver's or trustee's commissions) that may properly be attributed to the sale. It has been said that the circumstances of whether or not there is sufficient money in the general estate to defray such expenses 'is immaterial'."

erty solely within the jurisdiction of the bankruptcy court.

■ Petitioner's assertion that it never consented to the payment of the fees is without merit. As noted, supra, petitioner cannot escape the undisputed fact that it had *knowledge*[5] of the sale of the bankrupt's property, which was made for its benefit. Manifestly, this amounts to an implied consent by petitioner to the sale.

■ On the factual basis of the instant case, the preferable and equitable view as stated by Collier (marginal note 4, supra) is that the proceeds of such sale may be chargeable with a proportion of the administrative expenses.[6] In this connection, there are two points to consider. First, were any expenses herein charged properly attributable to the sale; and second, what is the proper pro rata share?

It is the Referee's view (expressed in his Memorandum in support of his findings) that he was forced to accept the proceeds of the sale, which he found in the hands of the bank. In accordance with law, therefore, it became the duty of the trustee to take custody of the funds, to deposit them in an authorized depository, and to pay out the funds by checks bearing the countersignature of the Referee. It was necessary to pay a premium on a bond because of the funds derived from this sale. Therefore, the Referee concluded that certain services of the bankruptcy court and the trustee were invoked by the petitioner's course of action and that hence this assessment of fees was proper.

■ The petitioner, as above noted, while resisting any assessment of fees, nonetheless asserts that the funds in the amount of $67.50 derived from the sale of the unencumbered chattels and $42.90 obtained by the trustee from the bankrupt, should be applied to the expenses of administration. In any event, petitioner urges the funds mentioned, supra, should be applied on the balance remaining due on its secured claim. This must be held subject to the rule that where the secured creditor has availed himself of the bankruptcy forum he should contribute ratably thereto.[7]

---

5. The language of the court in In re LaRowe, D.C.Minn., 91 F.Supp. 52, 54, pertaining to knowledge is helpful, although the facts are distinguishable:

"Petitioner's denial of consent, either express or implied, to the sale of the encumbered property free and clear of liens is not borne out by the record before the court. Petitioner admits that it had knowledge of the fact that the sale was being made and offered no objection thereto."

\* \* \* \* \*

The argument raised by petitioner in the companion case to this, In the Matter of Karolevitz, D. C., 130 F.Supp. 24, that none of the persons at whose instance the sale was had and dealt with the Referee, had the power to bind the United States, as sovereign, is not impressive.

6. While petitioner suggests (as in the Karolevitz bankruptcy) that costs may not be assessed against the United States, citing 28 U.S.C. § 2412(a), it cites no cases supporting its position. There are decisions wherein the United States or its agents have been assessed costs in bankruptcy. See, for instance, Recon-struction Finance Corporation v. Cohen, 10 Cir., 179 F.2d 773.

7. Following the quotation in footnote 4 from 4 Collier, 14th Ed., the author commented further (pages 1610–1613):

"\* \* \* the lienholder cannot be charged with additional expenses or the general costs of administration of the bankrupt's estate—such as costs of operating the business or the expenses and losses thereof, the general fees of the receiver, referee or trustee, *and the like— unless he has in some manner caused or benefited from such expenditure, or expressly or impliedly consented thereto.*

"However, the view that a consenting lienholder should be charged with a proportion of the expenses of administration stemming from the sale is not universal. Some courts have held that despite any consent to a sale free of liens, a lienholder is normally entitled to the full amount of his lien, minus only a contribution to the expense of administration measured by and not in excess of what it would have cost to foreclose the lien in state court. In cases where the sale did not bring a sum sufficient to satisfy the lien in full, this factor has been

The Referee's findings are somewhat vague in explaining whether the entire expense was assessed against the lienholder's share, or a proportional share, particularly as to the trustee's fees. However, the record reveals that with the exception of $42.90 recovered by the trustee, the entire proceeds of this estate were derived from the said auction sale.

On the basis of the record the order of the Referee herein is in all things affirmed.

It is so ordered.

Petitioner may have an exception.

emphasized almost to the exclusion of all others. But an exception has been permitted in some instances where the general estate is insufficient to defray the costs of administration, and in these cir-

cumstances it has been said upon occasion *that the secured creditor, having availed himself of the bankruptcy forum, should contribute ratably to such expenses.*" (Emphasis supplied.)