[No. D002934. Fourth Dist., Div. One. June 19, 1986.]

FRANCIS X. SCHEIDEL, JR., Plaintiff and Appellant, v.
KEITH LISTER et al., Defendants and Respondents.

COUNSEL

Francis X. Scheidel, Jr., in pro. per., Thomas M. Buchenau and John C. Skube for Plaintiff and Appellant.

Luce, Forward, Hamilton & Scripps and Peter Hans Klee for Defendants and Respondents.

## OPINION

LEWIS, J.—Francis X. Scheidel, Jr. (Scheidel), appeals a summary judgment in favor of Keith Lister and Lister Investment Co., Ltd. (Lister), on Scheidel's action seeking to establish a prescriptive easement over property that was sold free and clear of all liens and encumbrances in a bankruptcy judgment which is final. The trial court's ruling was made on the basis that the order of the bankruptcy court selling the property "free and clear" bars Scheidel's action under principles of res judicata. We hold principles of res judicata are inapplicable and we reverse.

Scheidel lays claim to a prescriptive right of ingress and egress over a strip of land slightly wider than one car width, running between the back yard, including a garage, of his San Diego office building property at 2150 Fourth Avenue, and the business properties at 321 Ivy Street and 2131 Third Avenue. Scheidel asserts the easement, the only means of his access to the back yard and garage, was cut off when Lister built a three-foot-high wall across the property lines of the property at 2131 Third Avenue which Lister purchased in the bankruptcy proceeding.[1]

---

[1]In this opinion, we do not determine the existence or nonexistence of an easement running to the benefit of the 2150 Fourth Avenue property. There are conflicting or inconsistent declarations on this question, thus raising triable issues of material fact. (Code Civ. Proc., § 437c; see *Mann* v. *Cracchiolo* (1985) 38 Cal.3d 18, 35-36 [210 Cal.Rptr. 762, 694 P.2d 1134]; *Rawlings* v. *D. M. Oliver, Inc.* (1979) 97 Cal.App.3d 890, 895-896 [159 Cal.Rptr. 119].) Accordingly, the only basis on which the summary judgment may be upheld is the pure question of law having to do with the free and clear sale ordered by the bankruptcy court. We need not further describe the facts of the asserted easement and can proceed by assuming, without deciding, it is established.

Scheidel purchased 2150 Fourth Avenue in 1978. In 1981, the then owner of the 2131 Third Avenue property filed a Chapter XI bankruptcy petition in the United States Bankruptcy Court, Southern District of California. In November 1983, Scheidel, an attorney, was representing Dwane Leo Cowell in the bankruptcy proceeding in connection with Cowell's tenancy at 2131 Third Avenue. Both Cowell and Scheidel were aware the 2131 Third Avenue property was being sold in a bankruptcy sale and Scheidel told Cowell that Scheidel had received notice the property was to be sold. Scheidel counseled Cowell on the effects of a bankruptcy sale on any interests Cowell or others had in the property.

On November 1, 1983, the bankruptcy court entered its judgment approving sale free and clear of liens and encumbrances, ordering in part, "[i]n accordance with 11 U.S.C. § 363(f)(4) and 11 U.S.C. § 363(f)(5), the sale of the property to Keith Lister shall be free and clear of any and all liens and encumbrances." The order also provided that the liens of all creditors that had encumbrances on the property shall attach to the proceeds of the sales. On January 10, 1984, Lister purchased the property pursuant to the judgment.

Scheidel raised no issue in the bankruptcy proceeding concerning the alleged prescriptive easement and he did not appeal the bankruptcy court's order. Lister built the wall on the 2131 Third Avenue property and on May 11, 1984, Scheidel filed this action in superior court seeking a declaration of his ownership of a prescriptive easement and an injunction against Lister preventing his use of the property. The summary judgment in favor of Lister was entered January 25, 1985.

I

 Scheidel contends that before a sale of property can be made free and clear, there are standards that must be complied with pursuant to bankruptcy law, and these standards were not met in the bankruptcy proceeding with the result the trial court's judgment must be reversed. As subtopics to this main argument, Scheidel asserts a bankruptcy court's authority to sell property free and clear cannot be based on construing hostile intent to be a dispute for purposes of 11 United States Code Annotated section 363(f)(4); pursuant to California law the trustee had sufficient notice of Scheidel's prescriptive use and thus could not have perfected transfer of Lister's property with regard to Scheidel's interest; and the bankruptcy court's approval of the free and clear sale did not afford Scheidel with the necessary adequate protection of his interest.

We consider arguments concerning free and clear sale authority under 11 United States Code Annotated section 363(f)(4). We also consider Lister's

assertion that Scheidel is precluded from attacking the sale. 11 United States Code Annotated section 363(f) grants authority to make "free and clear" sales as follows:

"(f) *The trustee may sell property* under subsection (b) or (c) of this section *free and clear of any interest* in such property *of an entity other than the estate, only if—*

"(1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;

"(2) *such entity consents*;

"(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

"(4) *such interest is in bona fide dispute;* or

"(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest." (Italics added.)

Scheidel asserts none of the subdivisions of subsection (f) has any bearing on the free and clear sale authority involved in this case. Lister, however, argues Scheidel consented to the sale (11 U.S.C.A. § 363(f)(2)) as shown by the facts he had notice of the sale, actually participated in the bankruptcy proceedings leading up to the sale, and was aware the sale would affect persons holding adverse interests in the property but nevertheless made no objection. Lister also asserts Scheidel's claim was in bona fide dispute (11 U.S.C.A. § 363(f)(4)) as evidenced by Lister's immediate and affirmative rejection of Scheidel's claim to any easement, and in any event Scheidel's attack on the bankruptcy court's authority is futile because it is a belated attack on the order of sale in collateral proceedings taken after the order had become final.

■ On the question of consent Lister relies on *In re La Rowe* (D.C.Minn. 1950) 91 F.Supp. 52, where a claimant who admitted having actual knowledge of the proposed bankruptcy sale and made no objection was found to have consented notwithstanding the claimant did not receive proper written notice of the proposed sale. Lister also cites *Miller* v. *McKenzie* (1933) 217 Cal. 389 [19 P.2d 1], where the court presumed on collateral attack that due and proper notice of sale was given (*id.* at p. 392) and the court held: "*Having been duly notified that the sale was to be 'free and clear' of encumbrances,* and thus having been afforded due opportunity to protect her interests, but having failed to take any steps in the bankruptcy proceeding

to forestall or preclude such sale, it is now too late for the appellant, upon collateral attack, to successfully challenge the validity thereof." (*Id.* at p. 393, italics added.)

*La Rowe* and *Miller* involve special features of either admitted or presumed knowledge of the proposed sale free and clear. Those features are not present in Scheidel's case where the knowledge he possessed derived from the rather accidental event of his representing a tenant of the building in question and Scheidel himself was not otherwise a direct stakeholder in the bankruptcy proceeding in a respect similar to the creditors in *La Rowe* and *Miller*. (See also *Comora* v. *Comprehensive Care Corp.* (1983) 140 Cal.App.3d 369, 374-375 [189 Cal.Rptr. 538], where the secured creditor was physically present at the hearings pertaining to the sale which provided for some but not all of the creditor's claims, and thus the creditor had an opportunity to insure that all sums due the creditor would be repaid.) *La Rowe* and *Miller* thus do not support a theory of consent due to Scheidel's inaction in the light of the knowledge he had as a nonstakeholding participant in the bankruptcy proceeding.

 Nor do we believe an alleged fulfillment of the open, notorious and hostile elements necessary to establish a prescriptive easement (see 1 Bowman, Ogden's Revised Cal. Real Property Law (1974) § 13.29, pp. 559-560, § 4.7, pp. 120-122), or a postbankruptcy rejection of the easement claim by the holder of the servient tenement establishes the "interest *is* in bona fide dispute" (italics added) within the meaning of 11 United States Code Annotated section 363(f)(4). The mere existence of an inchoate claim to a prescriptive easement during the term of the bankruptcy proceeding and sale does not rise to the dignity of a present dispute. A later rejection of the claim by a purchaser in the bankruptcy sale does not prove the dispute existed within the meaning of that statutory provision which apparently contemplates that at least some aspect of a disputed interest had come to light at the time of the bankruptcy proceeding and sale.

 The "consent" cases emphasizing knowledge and the "dispute" provision in the statute no doubt have as their underpinnings a concern of constitutional dimension dealing with the taking of property interests without due process. We do not think it is the law that a casual or accidental bankruptcy proceeding participant who obtains knowledge of the proceeding by that means alone can be deemed to have consented to the sale of a claim which was not asserted, recognized or otherwise directly involved in the proceeding.

 For the proposition Scheidel's attack on the bankruptcy court's authority is futile, Lister relies on *Lindsey* v. *Ipock* (8th Cir. 1984) 732 F.2d

619, 622, and *Miller* v. *R. K. A. Management Corp.* (1979) 99 Cal.App.3d 460, 468 [160 Cal.Rptr. 164]. In *Lindsey,* one Cryts along with other farmers had stored their grain in the bankrupt debtor's grain storage facilities and Cryts had pledged the negotiable warehouse receipts issued by the debtor to Cryts' own creditor. The trustee in bankruptcy proposed to sell the grain under section 11 United States Code Annotated section 363 with liens and claims of ownership to attach to the proceeds of the sales. Cryts and other farmers filed objections. There followed a state action on behalf of the farmers, but the federal courts enjoined the state action. The bankruptcy court then held a hearing to determine whether to sell the deteriorating grain free and clear of all liens and interests and authorized the trustee to do so. No appeal from this order was taken. After the trustee contracted with a buyer, Cryts and others unlawfully seized 31,000 bushels in which Cryts claimed an interest. Cryts was held in contempt of the bankruptcy court, which concluded in part Cryts was "fully aware that the grain was in the control and jurisdiction of the bankruptcy court." (*Lindsey, supra,* 732 F.2d at p. 621.)

In Cryts' appeal from the contempt order attacking the jurisdiction of the bankruptcy court under section 363(f)(4) and (5), the Circuit Court of Appeals said "he may not belatedly attack the bankruptcy order of sale in these collateral proceedings; once Cryts was apprised of the bankruptcy court's sale order and failed to timely appeal, he was obligated to obey these orders even if they were in error." (732 F.2d 619, 622.)

From the facts Cryts was an objector in the bankruptcy proceeding and was found to be fully aware that the particular property interest in question was within the bankruptcy court's jurisdiction, it is quite clear the court used the word "apprised" only in this context of an in-court participant in the very order in question. Scheidel's participation in the bankruptcy proceedings here is not comparable to Cryts' involvement. On this basis alone *Lindsey* cannot be viewed as furnishing any support for Lister's position that Scheidel's attack on the bankruptcy court's authority is futile.

Nor does *Miller, supra,* 99 Cal.App.3d 460, support Lister's position. There, the plaintiffs in the state court action, seeking to invalidate a bankruptcy court's order of sale free and clear, directly participated in the bankruptcy proceeding leading to the order of sale. Plaintiffs had brought federal appeals of the bankruptcy court's orders confirming the sale and ordering delivery of a deed executed by one plaintiff. The appeals were pending at the time plaintiffs brought the state action. The bankruptcy court had determined plaintiffs were creditors, not owners of the property in question before ordering the sale free and clear. Under these circumstances, this court upheld the trial court's dismissal of the state action and expunge-

ment of the lis pendens on the bases of no subject matter jurisdiction in the state court due to the bankruptcy court's exclusive jurisdiction (*id.* at pp. 465-467), failure to join an indispensable party, the trustee in bankruptcy (*id.,* at p. 467), and res judicata (*id.,* at pp. 467-468). With respect to the bar of res judicata, this court sets forth the following rule: "Plaintiffs argue that the bankruptcy court's orders confirming the sale free and clear of liens are not final because appeals are pending. *Under federal law, a judgment or order, once rendered, is final for purposes of res judicata until reversed or modified on appeal or set aside in the court of rendition. (Stoll* v. *Gottlieb,* 305 U.S. 165, 170-171 . . .; *Levy* v. *Cohen,* 19 Cal.3d 165, 172 . . .; *Nolan* v. *Judicial Council of Third Circuit, supra,* at p. 512.) *This is the rule even though the bankruptcy court's order is in excess of its jurisdiction or unconstitutional. (Chicot County Dist.* v. *Bank,* 308 U.S. 371 . . . .) Full faith and credit must be given a final order or judgment of a federal court. (*Levy* v. *Cohen, supra,* at p. 173.)" (*Id.,* at p. 468, italics added.)

The court answers the question of actual litigation of the issue as follows: "Plaintiffs' claim that res judicata does not apply because no matters were litigated between them and the defendants is without merit. Bankruptcy proceedings are in rem. '[A]ll persons concerned, including creditors, are deemed to be parties to the proceeding.' (*Levy* v. *Cohen, supra,* [19 Cal.3d 165], at p. 172; see 1 Collier on Bankruptcy (14th ed.) ¶ 2.09.)" (*Miller, supra,* 99 Cal.App.3d 460, 468.) This court concluded: "Plaintiffs have pursued their proper remedy by taking appeals from the bankruptcy orders in federal court. No other tribunal should frustrate the orderly completion of that process." (*Ibid.*)

It is important to note the plaintiffs in *Miller* were attempting to use a state court action to overturn bankruptcy court orders in which they had directly participated in the proceedings leading to the orders and from which they had appeals pending in federal court when they brought the state action. None of these features attends Scheidel's case. The reference to "persons concerned" for purposes of deeming those persons parties to the bankruptcy proceeding under the rule such proceedings are in rem, is not so broad as to encompass an unlisted nonparticipant in a bankruptcy proceeding which does not consider that person's claim. (Cf. *Levy* v. *Cohen* (1977) 19 Cal.3d 165 [137 Cal.Rptr. 162, 561 P.2d 252], where the person found to be bound by res judicata, plaintiff in a state court action seeking to impose liability upon general partners of debtor then in arrangement proceedings in bankruptcy court, was a listed creditor who filed his proof of claim in the bankruptcy court proceeding too late to receive any distribution or dividend in the arrangement proceeding, and, with respect to whom the bankruptcy court specifically released the debtor's general partners from liability in connection with all aspects of the debtor's business operation.)

Unlike *Miller,* which involved a claim of ownership rather than the creditor status adjudicated in the bankruptcy proceeding in which the plaintiffs had participated and which was still pending, here there was no adjudication of the particular interest in the bankruptcy proceeding, no sufficiently direct participation in the bankruptcy proceeding as to the claim later made in state court and no pending bankruptcy proceeding involving that interest when the later state action was brought. These differences in Scheidel's case take it outside any permissible application of *Miller* and particularly the res judicata ruling of *Miller.*

■ ■ ■ *Levy* v. *Cohen, supra,* 19 Cal.3d 165, 171-172, sets forth the rules pertaining to the doctrine of res judicata and applies them to the facts before the court as follows: "The doctrine of res judicata precludes parties or their privies from relitigating an issue that has been finally determined by a court of competent jurisdiction. [Citation.] 'Any issue necessarily decided in such litigation is conclusively determined as to the parties or their privies if it is involved in a subsequent lawsuit on a different cause of action.' (*Bernhard* v. *Bank of America* (1942) 19 Cal.2d 807, 810 . . . .) The application of the doctrine in a given case depends upon an affirmative answer to these three questions: (1) Was the issue decided in the prior action in question? (2) Was there a final judgment on the merits? (3) Was the party against whom the plea is asserted a party to or in privity with a party to the prior adjudication? [Citations.] Each of the foregoing requirements is met here:

"1. The present action seeks to enforce defendants' liability for an obligation of the limited partnership, a liability which was ordered extinguished by the order confirming plan of arrangement entered in the bankruptcy proceeding.

"2. An arrangement confirmed by a bankruptcy court has the effect of a judgment rendered by a federal district court. [Citation.] The federal rule is that a judgment or order, once rendered, is final for purposes of res judicata until reversed on appeal or modified or set aside in the court of rendition. [Citations.] The record does not indicate that the order confirming plan of arrangement was reversed, modified or set aside, [h]ence, that order is final.

"3. Proceedings in bankruptcy are proceedings in rem and all persons concerned, including creditors, are deemed to be parties to the proceedings. [Citation.] As an unsecured creditor of the limited partnership, plaintiff (against whom the plea of res judicata is here asserted) was a party to the consolidated proceeding in the bankruptcy court." (Fn. omitted.)

In Scheidel's case, as we have discussed, the first and third elements of res judicata as set forth and applied in *Levy* v. *Cohen* are missing. The doctrine of res judicata from the bankruptcy proceeding so as to bar the state action is inapplicable to Scheidel's case.

To the extent there may be concern with state court "interference" with the integrity or efficacy of the bankruptcy court's order in allowing later actions, we note the federal courts, in considering their own jurisdiction to enjoin state actions (28 U.S.C.A. § 2283), have evidenced little concern with any such interference in circumstances involving free and clear sales of a debtor's property with vastly larger potential impact of the later state action on the legal relationships involved in the sale. (See, e.g., *In re Federal Shopping Way, Inc.* (9th Cir. 1983) 717 F.2d 1264, and cases cited.)

During this appeal, we asked the parties to.discuss the applicability of *Matter of Tarnow* (7th Cir. 1984) 749 F.2d 464, to this case. Not surprisingly we received diametrically opposed views of *Tarnow*'s applicability. The issue *Tarnow* decided was whether a bankruptcy court was authorized by the bankruptcy law (11 U.S.C.A. § 506) to declare a secured creditor's lien not only disallowed but extinguished because the secured creditor filed its claim too late. *Tarnow* held no authority to extinguish the lien exists, and in doing so noted: "A long line of cases, though none above the level of bankruptcy judges since the Bankruptcy Code was overhauled in 1978, allows a creditor with a loan secured by a lien on the assets of a debtor who becomes bankrupt before the loan is repaid to ignore the bankruptcy proceeding and look to the lien for the satisfaction of the debt. [Citations.] Of course if there is some doubt whether the collateral is adequate for this purpose the creditor may want to file a claim with the bankruptcy court, so that in the event the collateral falls short he will have a claim against the estate (though just as an unsecured creditor) for the shortfall. See 11 U.S.C. § 506(a). But unless the collateral is in the possession of the bankruptcy court (or trustee—but there was no trustee here), which it was not in this case, the secured creditor does not have to file a claim." (*Id.* at p. 465.)

*Tarnow* did not involve a state action seeking to enforce the secured creditor's claim after a sale of the property by the bankruptcy court free and clear of liens and encumbrances. It is to be observed, the collateral was not even in the possession of the bankruptcy court in *Tarnow*. The sum and substance of *Tarnow* is the bankruptcy law enacted in 1984 did not change the line of earlier case law and did not authorize the bankruptcy court to extinguish the secured creditor's lien because of the secured creditor's late claim. It follows *Tarnow* has no direct application to Scheidel's case.

Returning to the question of the propriety of bringing a state action seeking to vindicate a property interest protectible under state law after a

bankruptcy sale expressly declaring the sale is free of all liens and encumbrances but not dealing with the particular interest asserted in the state action, we point out the general rule is: *"The trustee could only sell and convey such right, title and interest as he owned.* A sale by a trustee in bankruptcy is a judicial sale. [Citation.] The purchaser is bound to know that the only title which can be sold by the trustee is his own right, title and interest, *and the doctrine of caveat emptor,* applicable generally to judicial sales, *applies to a sale under order of a bankruptcy court."* (*Hagan* v. *Gardner* (9th Cir. 1960) 283 F.2d 643, 646, italics added.)

While the record does not contain a copy of the trustee's deed in this case, it is our expectation the trustee's deed to Lister is nothing more than the quitclaim deed usually involved in such a conveyance. If this is so, under the general rule, Lister took title subject to the inchoate claim to a prescriptive easement that existed while the trustee possessed the property. To protect himself as a purchaser within the concept of caveat emptor applicable to judicial sales, Lister should have examined the property. (See *Jones* v. *Harmon* (1959) 175 Cal.App.2d 869, 878-879 [1 Cal.Rptr. 192].) Failing such an examination which might disclose facts suggesting the presence of an easement with respect to which Lister might take protective action in connection with the sale, Lister cannot be deemed to have a title any greater than that possessed by the trustee. (*Ibid.*) Nor do we believe the free and clear sale conveys a title other than that which is insurable by a standard coverage policy of title insurance, an ordinary exclusion from which is easements, claims of easement or encumbrances that are not shown by the public records. (See Bowman, *supra,* Appendix, p. 699.)

Consider the example of a public right-of-way. (*Gion* v. *City of Santa Cruz* (1970) 2 Cal.3d 29 [84 Cal.Rptr. 162, 465 P.2d 50].) A "free and clear" bankruptcy sale of a debtor's property subject to a claim of public right-of-way without notice to or participation by the involved public entity in the bankruptcy proceeding on that matter surely would not, we think, be free of future litigation in the state court. In this connection it is the rule that adjudication of the debtor in the bankruptcy court is not of itself notice per se to those who deal with the debtor's property. (*Beach* v. *Faust* (1935) 2 Cal.2d 290, 293 [40 P.2d 822].) Either notice that such an interest might be affected by the bankruptcy proceeding or public entity participation in connection with that interest in the bankruptcy proceeding giving rise to the level of a "dispute" or "consent" (11 U.S.C.A. § 363(f)(2) and (3)) would be necessary before authority arose to make a sale truly free and clear of such an interest and before the doctrine of res judicata could be applied. The same is true of a prescriptive easement claim on a debtor's property sold free and clear by the bankruptcy court.

We conclude Scheidel is not precluded from pursuing his claim to a prescriptive easement in the state court action.

## II

As we said in footnote 1 *ante,* there are triable questions of fact connected with the issue of the existence or nonexistence of the claimed easement. Thus, we do not address Lister's contentions involving questions of fact going to this issue.[2] That is to be left to another day.

## III

In light of the conclusions we have reached, Lister's request for sanctions for Scheidel's appeal is inappropriate.

Judgment reversed.

Staniforth, Acting P. J., and Wiener, J., concurred.

---

[2]Lister's contentions involving questions of fact are: The undisputed facts show that the alleged prescriptive easement could not exist because the requisite statutory period was interrupted and stayed by the filing of a bankruptcy petition—the running of the requisite five-year prescriptive period is tolled by the automatic stay provided for in 11 United States Code Annotated section 362(a)(3); the undisputed evidence indicates that prescriptive use did not occur throughout a five-year period prior to the date the bankruptcy petition was filed; and Scheidel's own conduct conclusively establishes that no prescriptive easement existed.